IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WAYNE B. ROBERTS,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        02: 08-cv-0625
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
            Defendant.               )

**MEMORANDUM OPINION**

## I.     Introduction

Wayne Roberts, ("Plaintiff"), brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), which denied his application for Disability Income Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §201, *et. seq.*

## II.    Background

### A.     Factual Background

Plaintiff was born on August 16, 1948.  As of his date of last insured, he was forty-eight years old. Plaintiff has a high school education. He served in the United States Army and saw active duty from 1969 to 1970, then remained in the Army Reserves until 1975. Plaintiff last worked in January 1991 as a chipper/welder at Shenango, Inc.  He left the position due to a work-related knee injury and has not been employed since that date. His date of last insured for purposes of DIB is December 31, 1996. T. 47.

Initially, in his application for benefits, Plaintiff alleged disability as of January 9, 1991 due to osteotomy of the left leg and degenerative arthritis of the left knee join.  Additionally, in

his motion for summary judgment, Plaintiff alleges disability due to Grade III chondral lesion of the medial femoral condyle of the left knee and torn lateral meniscus of the left knee. (Document No. 15 at 5).

### B.  Procedural History

Plaintiff filed a first application for DIB on August 9, 1999, T. 81-83, which was initially denied by the Commissioner on August 17, 1999. T. 61.  Plaintiff claimed disability as a result of osteotomy of the left leg and degenerative arthritis of the left knee joint, with an alleged onset date of January 9, 1991. T. 91. By decision of an administrative law judge ("ALJ") dated June 28, 2000, Plaintiff's claim was denied. T. 21-28.  The Appeals Council affirmed the decision of the ALJ by order dated December 12, 2000. *Id.* ; T. 6-7.

Plaintiff filed the application at issue in this case on February 13, 2006, alleging again that he became disabled on January 9, 1991. T. 47. Plaintiff's claim was initially denied by the Commissioner on March 18, 2006, *Id.*, and again after reconsideration on April 15, 2006. *Id.* Plaintiff filed a first request for a hearing before an ALJ on April 18, 2006. T.57. The request was originally dismissed on the basis of *res judicata*. T. 29-30.  The Appeals Council vacated the dismissal and remanded the case to an ALJ, on grounds that *res judicata* did not apply because the Social Security Administration's criteria for listed musculoskeletal impairments had changed since the original June 28, 2000 determination. T. 47. Plaintiff thereafter filed a timely request for a hearing before an ALJ on November 15, 2006. T. 58.  A hearing was held on April 9, 2007. Plaintiff, who was represented by counsel, appeared at the hearing and testified. T. 431-456. Additionally, the ALJ heard testimony from an impartial vocational expert. T. 452-54.

The ALJ determined, by decision dated May 15, 2007, that Plaintiff was not disabled through December 31, 1996, his date of last insured.  T. 47-53. Specifically, the ALJ determined

that Plaintiff had the ability to perform a range of sedentary work limited to work that did not involve use of scaffolds or ladders or more than occasional other climbing and that did not involve any balancing, kneeling or crawling, or more than occasional stooping or crouching, and that allowed a sit/stand option. T. 50. Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review the decision of the ALJ on March 12, 2008, making the ALJ's decision the final decision of the Commissioner. T. 8-9.

Plaintiff thereafter filed a Complaint in this Court on May 8, 2008, seeking judicial review of the final decision of the Commissioner. (Document No. 1). As is this customary practice in the United States District Court for the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment. In his brief in support of his motion for summary judgment, Plaintiff argues that substantial evidence does not support the ALJ's determination that Plaintiff was not disabled prior to the date last insured. The Commissioner, in response, argues that substantial evidence supports the ALJ's determination. The Court agrees with the Commissioner. For the following reasons, the Court will grant the Commissioner's motion for summary judgment, (Document No. 11), and deny Plaintiff's motion for summary judgment. (Document No. 15).

III.    **Standard of Review**

The Social Security Act limits this Court's review of disability claims to the final decision of the Commissioner. 42 U.S.C. §405(g). If said decision is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. §405(g); *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 391 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It means more than a mere scintilla of evidence, but less than a preponderance of the evidence. *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988).

In determining whether a claimant is disabled within the meaning of the Social Security Act, the Commissioner utilizes a five-step sequential evaluation process.  20 C.F.R. §§404.1520, 416.920.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. §404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §423(d)(1).  This may be done in two ways:

> (1)      by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Reg. No. 4, Subpt. P, Appdx. 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or

> (2)      in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy …" *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. §423(d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes a plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777.  Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, give claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d  Cir. 1979).

Where a claimant has multiple impairments that may not individually reach the level of severity necessary to qualify for any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment.  Bailey v. Sullivan, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

## IV.     The ALJ's Determination

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act, after an analysis of each of the five steps of the sequential evaluation process.  In making this determination, the ALJ concluded that: (1) Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date (January 9, 1991), through his date of last insured (December 31, 1996);  (2) Plaintiff suffered from one severe impairment: degenerative arthritis of the left knee; (3) Plaintiff's degenerative arthritis of the left knee did not satisfy the criteria of Listing 1.02 or Listing 1.03 because it did not result in an "inability to ambulate

effectively" as required by both Listings; (4) Plaintiff had the residual functional capacity to perform work at the sedentary level, with the additional limitations that Plaintiff not be required to use scaffolds or ladders, or be required to do any balancing, kneeling, crawling, or more than occasional climbing, stooping, or crouching, and allows a sit/ stand option; (5) Plaintiff did not have the residual functional capacity, prior to the date of last insured, to return to past relevant work; and (6) Plaintiff could perform jobs that exist in the national economy, based on his age, education, work experience and residual functional capacity. T. 49-53.   Therefore, the ALJ determined, Plaintiff did not meet the meaning of disabled for the relevant time period. T. 52.

## V.    Discussion

The Social Security Act authorizes payment of DIB to an individual determined to be "disabled," as defined by the Act. *See Barnhart v. Thomas*, 540 U.S. 20, 21 (2003).    In order qualify for benefits, a claimant is required to show that he or she was insured at the time of onset of the disability.  *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 200-01 (3d Cir. 2008) (citing *Kane v. Heckler*, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985)). Indeed, for purposes of qualifying for DIB under Title II of the Act, a claimant must show that he or she was disabled between the alleged disability onset date and the date of last insured. *Johnson*, 529 F.3d at 201.

Under the Act, "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§416(i), 423(d)(1).  *See Fargnoli*, 247 F.3d at 38-9.

As a threshold matter, the Court notes that Plaintiff has offered medical evidence dating from 1990 to 2006.[1]  However, (as Plaintiff appears to concede, see Document No. 15 at 6), the date of last insured for purposes of his application for DIB is December 31, 1996. T. 150. Therefore, in considering Plaintiff's claim, the Commissioner was required to consider only whether Plaintiff was disabled between the alleged disability onset date to the date of last insured. *Johnson*, 529 F.3d at 201. While the ALJ did note the medical records provided by Plaintiff dated after the date of last insured, he determined that those records do not support a finding that the Plaintiff was disabled during the relevant time period. T. 49-50, 51.

Plaintiff makes several arguments challenging the ALJ's disability determination. Plaintiff challenges the ALJ's determinations at steps two, three, four and five of the sequential evaluation process. (Document No. 15 at 1).   The Court, however, finds that the ALJ's determinations at each of these steps are supported by substantial evidence and will therefore affirm the ALJ's determination.

### A.   Substantial Evidence Supports the ALJ's Finding at Step Two of the Sequential Evaluation Process

In regard to the ALJ's determination at step two of the sequential evaluation process, Plaintiff argues that the ALJ erred in omitting "important medically determinable impairments that could have a profound effect upon [Plaintiff's] functional capacities during the relevant period, such as effusion of the knee joint, synovitis, diminished strength, atrophy and pain." (Document No. 15 at 11-12).  Specifically, Plaintiff argues that the ALJ failed to consider all of the medical evidence of record at this stage, particularly evidence of those physical impairments

---

[1]     Additionally, Plaintiff offered the written opinion of a vocational expert, Edward Pagella, dated January 1, 2007.  T. 192-95.  Plaintiff also offered a written opinion of Mr. Pagella, dated May 7, 2007, to the Appeals Council in response to the opinions of the vocational expert testimony from the administrative hearing. T. 427-28.

that affect Plaintiff's ability to meet the exertional requirements of jobs. (Document No. 15 at 11-12).

At step two, the ALJ determined that Plaintiff's only severe impairment for the relevant time period was degenerative arthritis of the left knee.

At this step of the sequential evaluation process, the Commissioner must determine whether the claimant has a "severe" impairment.  20 C.F.R.§404.1520(a)(4)(ii).  In determining whether a claimant's impairment is severe, the Commissioner must consider whether the impairment or combination of impairments significantly limits a claimant's mental or physical ability to do basic work activities.  20 C.F.R. §404.1521(a).  A claimant's ability to do basic work activities is defined as the abilities or aptitudes necessary to do most jobs, including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision and co-workers; and dealing appropriately with changes in the work setting. 20 C.F.R. §404.1521(b).

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Commissioner*, 347 F.3d 541, 546 (3d Cir. 2003) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *McDonald v. Secretary of Health & Human Services*, 795 F.2d 1118, 1124 (1st Cir. 1986)).   "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea v. Commissioner*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting Social Security Ruling 85-28). "*Newell* and *McCrea* instruct that the determination of whether an applicant has met [his] burden at step two in the sequential anlaysis should focus upon the evidence adduced by the applicant.  If such evidence demonstrates that the

applicant has "more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Magwood v. Commissioner*, [cite], 2008 WL 4145443 at *2 (3d Cir. Sept. 9, 2008) (quoting *Newell*, 347 F.3d at 546; McCrea, 370 F.3d at 362; 20 C.F.R. §404.920(d)-(f)).

After a review of the ALJ's determination at step two, in light of the medical evidence of record, the Court finds that remand is inappropriate at this step of the sequential evaluation process. While the Court agrees that the ALJ did not specifically analyze whether Plaintiff's effusion of the knee joint, synovitis, diminished strength, atrophy and pain were severe impairments for purposes of step two of the sequential evaluation process, the ALJ did not make his disability determination at this stage. Rather, the ALJ determined that Plaintiff had a severe impairment of degenerative arthritis in the knee and continued in the sequential analysis to determine Plaintiff's residual functional capacity, in light of all of Plaintiff's alleged impairments. In doing so, the ALJ thoroughly evaluated the medical evidence of record, including the effects of surgical osteotomy of the left knee and related procedures and persistent pain and lack of strength in the left knee after the procedure. T. 49. The ALJ likewise considered swelling in Plaintiff's knee during and after the relevant time period. T. 51. The ALJ determined, after an examination of the medical records, that during the relevant time period these limitations were not disabling. *Id.* Plaintiff does not show how the ALJ's disability determination would have changed had he considered effusion of the knee joint, synovitis, diminished strength, atrophy or pain severe impairments, beyond those exertional limitations that the ALJ considered. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Therefore, even assuming that the ALJ failed to include all of Plaintiff's severe impairments at step two, this would be harmless error, as the ALJ did not make his disability determination at this step. Indeed, remand would

not affect the outcome of the case and is not warranted.  *Rutherford*, 399 F.3d at 553 (holding that, where the administrative record indicates that the ALJ "relied on the voluminous medical evidence as a basis for his findings regarding [the claimant's] limitations and impairments" remand would not affect the outcome of the case).  *See also Lee v. Astrue*, Civil Action No. 06-5167, 2007 WL 1151281 at *3 (E.D. Pa. April 12, 2007) (citations omitted) (noting that the ALJ's step two determination would not warrant remand, when the ALJ proceeded in the five step sequential evaluation process and analyzed the claimant's limitations, considering both severe and non-severe impairments).

**B.     Substantial Evidence Supports the ALJ's Determination at Step Three of the Sequential Evaluation Process**

In support of his argument that the ALJ erred at step three of the sequential evaluation process, Plaintiff contends that the ALJ erred here for two reasons.  First, Plaintiff argues, the ALJ erred in his determination that Plaintiff's severe impairment did not meet the criteria of Listings 1.02 and 1.03 because it did not result in an inability to ambulate effectively. (Document No. 15 at 12). Plaintiff argues that the medical evidence supports only the determination that Plaintiff's impairment prevented him from ambulating effectively, as defined by the Regulations. (Document No. 15 at 13).  Second, Plaintiff argues that the ALJ erred at this step by failing to undertake an "equivalence" analysis. (Document No. 15 at 14).

At step three of the sequential evaluation process, the ALJ determined that Plaintiff's impairments did not meet the criteria for either Listing 1.02 or 1.03, insofar as the treatment records do not show an inability to ambulate effectively.  The Court finds both that the ALJ undertook a proper equivalence analysis and that substantial evidence supports the ALJ's determination at this step of the sequential evaluation process.

At step three of the sequential evaluation process, the Commissioner must undertake an equivalence analysis, *i.e.*, determine whether a claimant's severe impairment or impairments meet or medically equal the criteria for an impairment found in 20 C.F.R. Part 404, Subpt. p., Appx. 1.   20 C.F.R. §404.1520(a)(4)(iii).   In determining whether an impairment meets or medically equals a listing, the Commissioner must specify those listings that potentially apply to the claimant's impairments and give reasons why those listings are not met or equaled.  *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 n.2 (3d Cir. 2000).  The Commissioner must evaluate "the available medical evidence in the record and then [set] forth that evaluation in an opinion … ."  *Scatorchia v. Commissioner of Social Security*, 137 Fed. Appx. 468, 471 (3d Cir. 2005).

In order to be considered disabled at step three of the sequential evaluation process, a claimant's impairment or impairments must meet or medically equal an impairment listed in the Regulations.  *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).  "'For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'"  *Williams*, 970 F.2d at 1186 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990)) (emphasis in original).

At issue here is whether Plaintiff's impairment met the requirements of either or both Listing 1.02 and 1.03. Listing 1.02 and 1.03 fall under the category of musculoskeletal impairments. 20 C.F.R. Part 404, Subpt. p., Appx. 1, §§1.00-1.03.  Listing 1.02 requires the following:

> 1.02 Major Dysfunction of a Joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous

ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints. With:

    A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in an inability to ambulate effectively, as defined in 1.00B2b;

OR

    B.    Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpt. p., Appx. 1, §1.02.  Similarly, Listing 1.03 requires:

1.03 Reconstructive Surgery or Surgical Arthrodesis of a Major Weight-Bearing Joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Part 404, Subpt. p., Appx. 1, §1.03.  Listing 1.00B2b, which defines ineffective ambulation, states:

To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living."

20 C.F.R. Part 404, Subpt. p., Appx. 1, §1.00B2b(1). Examples of "ineffective ambulation" under Listing 1.00B2b include, the inability to walk without the use of a walker, two crutches or two canes; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. 20 C.F.R. Part 404, Subpt. p., Appx. 1, §1.00B2b(2).

First, the Court finds that the ALJ did a proper equivalence analysis, including in his analysis an examination of each of Plaintiff's severe and non-severe impairments found in the

record medical evidence for the relevant time period.  Specifically, the ALJ examined Plaintiff's history of osteotomy of the left knee and other procedures related to his left knee injury. T. 49. Moreover, the ALJ considered Plaintiff's degenerative knee condition, pain and limitations in strength in his left knee. *Id.*   Considering these impairments, the ALJ evaluated the record medical evidence in determining whether said impairments singly or in combination met the requirements for Listings 1.02 and/ or 1.03.[2] The ALJ gave specific reasons for determining that Plaintiff's impairments failed to meet or medically equal the listings. *See Burnett*, 220 F.3d at 119 (citing *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)) (requiring an ALJ to set forth specific reasons for a determination at step three). Notably, the ALJ evaluated evidence provided by Plaintiff's treating physicians during the relevant time period, particularly in regard to Plaintiff's surgical osteotomy, which indicated limitation in strength and range of motion in the knee, but did not indicate a need for an ambulatory device.  Moreover, the ALJ considered medical records from 2001 and noted that, while Plaintiff was required to use crutches after knee replacement surgery in 2001, the record does not indicate that an ambulatory device was required during the relevant time period. T. 49.

Further, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff has failed to show "ineffective ambulation" for the relevant time period, as required by both Listing 1.02 and Listing 1.03.  The medical records dated prior to the date of last insured indicate that Plaintiff had surgery on his left knee in 1991. T. 202.  He was directed to use crutches and advised to bear weight on the knee as tolerated. *Id*. Plaintiff underwent physical therapy following this procedure in 1991. The treatment records indicate that Plaintiff was unable to perform a straight leg raise with more than 5 pounds and that he complained of pain

---

[2]    The Court notes that Plaintiff does not challenge the ALJ's consideration of Listings 1.02 and 1.03, as the only applicable listings in this case. (Document No. 15 at 12-14).

and increased swelling following exercise. T. 232-245.  The treatment records from physical therapy do indicate some increase in strength and flexibility following knee surgery. *Id*. Additionally, the records do not indicate an inability to ambulate without an assistive device. In fact, a functional capacity evaluation dated April 1992 indicates that Plaintiff was capable of standing for thirty minutes, and had a range of motion within functional limitations in his left lower extremity. T. 247.  Additionally, Plaintiff was able to ascend and descend a flight of 14 stairs four times while holding the rail. *Id.* Plaintiff was seen for follow up with Dr. Haser in January 1994. Records from this visit indicate that Plaintiff had some tenderness in his left knee. T. 269.  They also indicate that Plaintiff had a full range of motion and full sensory and motor function. *Id*. There is no evidence that, at this point, Plaintiff required an ambulatory device, rather, Dr. Haser indicated that Plaintiff could perform sedentary or light activities, which did not require squatting, kneeling or stair climbing. T. 270-71.  Likewise, in October 1995, the medical records do not show that Plaintiff was required to use an ambulatory device, but could ambulate on his own. T. 273.  At this time, he was advised not to do repetitive squatting, kneeling or stairclimbing. *Id*.

In August 1996, the medical records again indicate that Plaintiff was able to ambulate, but not able to do repetitive squatting, kneeling, running, jumping or climbing ladders. T. 274. Records from Dr. Haser from August 1997 indicate that Plaintiff appeared to be stabilized. T. 275.  Dr. Haser again states that Plaintiff would be limited in his ability to do repetitive squatting, kneeling, etc. and would likely remain restricted in these areas. T. 276.

Plaintiff testified that, in 2001, well past the date of last insured, his knee began to deteriorate and he was required to use crutches for ten months. T. 441.  Treatment records from Dr. Haser from March 2001 indicate that, while Plaintiff had stiffness, he also had a range of

motion and no instability in his left knee. T. 209.  He underwent left knee arthroplasty in April 2001, with good results. T. 211. After the procedure, Plaintiff was given crutches to assist with ambulation for 12 months as needed. T. 214. Plaintiff then underwent manipulation in his left knee. T. 215. The records also indicate that, following the manipulation, Plaintiff was instructed to use a walker for ambulation, but to bear weight on the left knee as tolerated for 6 weeks. T. 226. Plaintiff testified that he used crutches for two to three months. T. 443.  After that, Plaintiff testified that he was required to use a cane as needed until the date of the administrative hearing. T. 443-44.  The medical records indicate that, after arthroplasty and manipulation, Plaintiff continued to improve in his ability to ambulate. In February 2002, Plaintiff had no effusion in the knee and no instability.  T. 295. Further, he had no complaints of pain at this time. *Id*. In June 2006, a follow-up examination indicated that Plaintiff felt very well and had full extension of his left leg. T. 287.

These records do indicate that, for the relevant time, *i.e.*, between 1991 and 1996, Plaintiff did not meet the requirements of Listings 1.02 and 1.03 relative to ineffective ambulation.  Rather, records from Dr. Haser indicate that between 1991 and 1996, Plaintiff was able to ambulate and continued to have increased ability in his left knee.  According to Dr. Haser's treatment notes, Plaintiff was limited only in his ability to repetitively kneel, squat, run, jump and climb ladders. Nothing in the medical records indicate that Plaintiff was unable to "walk over a sufficient distance to carry out activities of daily living."   20 C.F.R. Part 404, Subpt. p., Appx. 1, §1.00B2b(1). Indeed, Plaintiff was able to climb steps several times and stand for thirty minutes. T. 270-71. Additionally, Plaintiff testified at the administrative hearing that, during the relevant time period he did cleaning and cooking in his home. T. 436. He also testified that he was capable of taking care of his daily needs. *Id*. Therefore, the Court finds that based on

both the medical evidence of record and Plaintiff's self-reports of daily activity for the relevant time period, substantial evidence supports the determination that the requirements of Listings 1.02 and 1.03 are not met, as Plaintiff has not shown an inability to ambulate effectively.  *See e.g. Papa v. Barnhart*, Civil Action No. 05-3694, 2006 WL 2711745 at *2 (E.D. Pa. Sept. 20, 2006).

## C.   Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination

Plaintiff also argues that the ALJ erred in determining his residual functional capacity, insofar as substantial evidence does not support the conclusion that Plaintiff was able to perform sedentary work during the relevant time period. (Document No. 15 at 15).  Specifically, Plaintiff argues that the medical evidence shows that Plaintiff was not able to engage in any activity after his osteotomy and, therefore was at least entitled to a closed period of disability during that period. *Id.* Furthermore, Plaintiff argues, he was unable to perform sedentary work for the entire relevant time period and the ALJ failed perform an adequate residual functional capacity assessment. (Document No. 15 at 15-16).

" 'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Fargnoli v. Commissioner*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett*, 220 F.3d at 121) (quotations omitted); 20 C.F.R. §404.1545(a)(2).  In determining a claimant's residual functional capacity, the Commissioner must consider a claimant's severe and non-severe impairments.  20 C.F.R. §404.1545(a)(2). Moreover, the Commissioner is required to consider all of the evidence of record in making a residual functional capacity determination, including both medical and non-medical evidence. *Burnett*, 220 F.3d at 121 (citing *Plummer*, 186 F.3d at 429; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). *See also Fargnoli*, 247 F.3d at 41 (holding that the Commissioner must consider all

evidence including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others").

Here, the ALJ determined, based on the medical and non-medical evidence of record, that Plaintiff had the residual functional capacity to perform "work that does not require: exertion above the sedentary level; or the use of scaffolds or ladders; or any balancing, kneeling, crawling; or more than occasional climbing, stooping, or crouching; and allows the alternating of sitting and standing." T.50.

After a review of the record that was before the ALJ, the Court finds that substantial evidence supports his residual functional capacity determination. Indeed, as discussed above, the medical records do not support Plaintiff's claim that he was unable to perform sedentary work following his osteotomy in 1991. Rather, the treatment records from Dr. Haser indicate that, while Plaintiff was limited in his ability do repetitive squatting, kneeling or stairclimbing, running or jumping, he was not so limited that he would not have been capable of performing sedentary activities. T. 247-276. The evidence also indicates that Plaintiff was treated conservatively with non-steroidal anti-inflammatory drugs and pain medication for short periods of time as needed, T. 261-63, 270-74, and indicates that post-operative physical therapy was effective in allowing Plaintiff to work at the sedentary level. T.232-245. Moreover, Plaintiff testified that he was able to perform light household work and cooking. T. 436. Based on the above, there is substantial evidence from which the ALJ determined that Plaintiff was capable of performing sedentary work, with the additional limitations that he not use of scaffolds or ladders, do any balancing, kneeling, crawling or more than occasional climbing, stooping, or crouching, with a sit/stand option for the relevant time period.

**D.    Substantial Evidence Supports the ALJ's Determination at Step Five of the Sequential Evaluation Process**

Finally, Plaintiff argues that the ALJ erred in his determination at step five of the sequential evaluation process.  Specifically, Plaintiff contends that the ALJ failed to properly consider the written opinion of Edward Pagella, a vocational expert offered by Plaintiff, which indicated that, based on Plaintiff's residual functional capacity, there would be no jobs in the local or national economy that Plaintiff could perform. (Document No. 15 at 17).  Plaintiff argues that the ALJ failed to properly weigh this evidence with the testimony of the vocational expert taken at the administrative hearing. *Id.* Further, Plaintiff argues that the ALJ's determination at step five is not supported by substantial evidence insofar as the hypothetical question posed to the vocational expert at the administrative hearing failed to reference Plaintiff's "limitations based upon pain, swelling, effects of synovitis, and the like." (Document No. 15 at 18).

Step five of the sequential evaluation process required that the Commissioner determine whether there are jobs in the economy that the claimant is capable of performing, based on an assessment of the claimant's residual functional capacity, age education and work experience. 20 C.F.R. §404.1520(a)(4)(v); 20 C.F.R. §404.1560(c)(2). The Commissioner bears the burden at this stage to show that there are jobs the claimant can perform. *Id.*; *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004).

When relying on the testimony of a vocational expert at step five of the sequential evaluation process, the ALJ is required to ask a hypothetical which "reflect[s] all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269

(3d Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 215 (3d Cir. 1984)).  *See also Ramirez*, 372 F.3d at 552-53.

Here, the ALJ asked the vocational expert the following hypothetical at the administrative hearing:

> I'd like you to consider an individual of the claimant's age, education and work history. By age I mean the age he held at the, on December 31st, 1996, that would be 46-years-old, who's able to perform work at the sedentary exertional level that does not require the use of scaffolds or ladders, or any balancing, needing [sic], or crawling, and no more than occasional climbing, stooping or crouching. …
>
> Would there be any entry level occupations that a person with this profile could perform, and if so, would you tell us what they are?

T. 453.  The vocational expert testified that an individual with those limitations would be capable of performing several jobs existing in the national economy. *Id.* Additionally, the ALJ asked the vocational expert to consider an individual with those limitations requiring the ability to alternate sitting and standing. *Id.*  Again, the vocational expert testified that there were jobs in the economy for an individual with those limitations. *Id.*  The ALJ then asked if a worker could work in these positions if they were required to elevate a leg to waist level or higher. *Id.*  The vocational expert testified that an individual with these limitations could work as an addresser with accommodations from the employer.  *Id.* The ALJ conceded that the accommodation requirement would take the job out of the category of substantial numbers in the economy. T. 454.  The Court finds (1) that substantial evidence supports the ALJ's determination at step five, given the testimony of the vocational expert at the administrative hearing; and (2) the hypothetical posed by the ALJ adequately addressed Plaintiff's limitations.

First, the Court finds Plaintiff's argument that the ALJ's determination at step five is not supported by substantial evidence, as the vocational expert's testimony at the administrative

hearing is in conflict with the written opinion of Plaintiff's own vocational expert to be without merit.  Indeed, Mr. Pagella's opinion that Plaintiff was completely disabled during the relevant time period is not supported by the medical evidence of record, particularly the treatment records from Plaintiff treating physicians, as discussed above.  Further, the determination of whether an individual is disabled is determination left to the ALJ.  Therefore, Mr. Pagella's determination that Plaintiff is disabled is afforded little weight.  20 C.F.R. §404.1527. Therefore, the testimony of a vocational expert, whose expertise Plaintiff's counsel stipulated to, is substantial evidence from which the ALJ could determine that Plaintiff is not disabled at step five of the sequential evaluation process.

Moreover, as discussed above, the ALJ's residual functional capacity determination is supported by substantial evidence. Therefore, the hypothetical question including all of Plaintiff's limitations found in the residual functional capacity determination is adequate. *See Rutherford*, 399 F.3d at 554 n. 8 (noting that attacks on a hypothetical question very often "boil down to attacks on the [residual functional capacity] assessment itself").  Indeed, the ALJ's hypothetical included the very limitations that Dr. Haser referenced several times in his treatment notes and, therefore, adequately reflected the limitations reflected in the record medical evidence.  *Cf Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002).

**VI.     Conclusion**

Based on the foregoing, Plaintiff's motion for summary judgment will denied and the Commissioner's motion for summary judgment will be granted.  An appropriate order follows.

BY THE COURT:

s/ Terrence McVerry
Terrence F. McVerry
United States District Court Judge

September 30, 2009.


cc:      counsel of record.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WAYNE B. ROBERTS,                    )
                                     )
              Plaintiff,             )
                                     )
      v.                             )      Civil Action No. 08-625
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
              Defendant.             )

## ORDER OF COURT

**AND NOW**, this 30th day of September, 2009, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1.     The Motion for Summary Judgment filed by Plaintiff, Wayne B. Roberts
       (Document No. 10) is **DENIED**;

2.     The Motion for Summary Judgment filed by Defendant Commissioner of
       Social Security, Michael J. Astrue (Document No. 11) is **GRANTED**; and

3.     The Clerk will docket this case as closed.


                                     BY THE COURT:

                                     s/ Terrence F. McVerry
                                     Terrence F. McVerry
                                     United States District Court Judge


cc:    counsel of record.